(May 11, 2006)

■ MARIBEL FLORES, Respondent, v CITY OF NEW YORK, Defendant, and EMPIRE CITY SUBWAY, Appellant. [815 NYS2d 48]—

Order, Supreme Court, Bronx County (Mark Friedlander, J.), entered January 10, 2005, which denied the motion by defendant Empire City Subway (ECS) for summary judgment, unanimously reversed, on the law, without costs, the motion granted and the complaint against it dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff commenced this action against defendant City of New York (not a party to this appeal) and ECS, alleging she sustained injuries when she tripped and fell over a defect in a crosswalk. Specifically, plaintiff testified at her deposition that on September 21, 1998, as she was crossing the street at an intersection in the Bronx, she fell in a hole adjacent to a manhole cover. Her notice of claim placed the location of this hole at "approximately five feet south of the Northeast corner of the intersection of Decatur Avenue and East 193rd Street, said defect being adjacent to a manhole cover labeled 'D.W.S' with said defect measuring approximately three feet, one inch in width and four inches deep." Plaintiff allegedly sustained numerous injuries as a result.

ECS produced two project managers for depositions. The first, Dirk Rolff, testified that he conducted a search of his company's records concerning the accident location, and found no jobs for the intersection in question during the two years prior to the accident. He was shown an application for a "test pit" in the subject location signed by another of ECS's project managers, one Alphonso Petrizzi. Mr. Rolff testified that a "test pit" is a

small street opening that permits the company to confirm the location of its underground facilities. This application was for an opening six feet wide and eight feet long in the northwest corner of Decatur Avenue and East 193rd Street. However, Rolff had no indication from his records search that the work relating to this application was performed.

Mr. Petrizzi testified that he also conducted a search for records in the subject location and determined that an engineering consultant known as RBA Group had a record and diagram of a "test pit" dug at the intersection in question. The excavation was performed on January 20, 1998 by a contractor named Safeway and the paving work was done by a contractor named Tri-Messine. The work was inspected on January 27, 1998.

The diagram provided by RBA Group regarding this test pit revealed that the excavation work began 13 feet east of the northwest curb and extended 17 feet east of that curb. The excavation was made on Decatur Avenue, was four feet wide, eight feet long and five feet deep, and extended six feet south of the north curb line. It began to the east of a manhole identified by Mr. Petrizzi as belonging to defendant ECS. Mr. Petrizzi testified this was a diagram of the actual work performed, not merely a survey. No other manholes were shown on the diagram.

Mr. Petrizzi noted that only on rare occasions would a test pit be dug near a municipal manhole, and on those occasions the digging would be done by hand. He testified that he did not believe this excavation was performed by hand. He was unable to produce any further documentation regarding this test pit, since ECS had maintained its records on West Street, across the street from the World Trade Center, and those records were destroyed on September 11, 2001.

Mr. Petrizzi was shown photographs of the area where plaintiff fell, which depicted the manhole with the initials "D.W.S." He testified the manhole shown in the pictures was not owned by ECS but was a municipal manhole owned by the New York City Department of Water Service.

ECS moved for summary judgment, arguing there was no evidence that any work performed by it or on its behalf was negligent or caused any defects leading to plaintiff's injuries. ECS further argued that plaintiff claimed she fell on 193rd Street in the crosswalk between the northeast and southeast corners of the intersection while the work performed was in a different crosswalk, namely, between the northwest and northeast corners of the intersection on Decatur Avenue. Plaintiff, in opposition, argued that ECS failed to sustain its initial burden of proof since it could not produce documents supporting its

motion. Plaintiff contended that as a result, there were questions of fact regarding the excavation work performed at the intersection.

The IAS court denied ECS's motion on the grounds, inter alia, that "there remain numerous questions of fact for a jury which prevent movant from making a prima facie case for summary judgment."

Where a defendant is the proponent of a motion for summary judgment, it has the burden of establishing that there are no material issues of fact in dispute and thus that it is entitled to judgment as a matter of law (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Once the defendant demonstrates its entitlement to summary judgment, the burden then shifts to the plaintiff to present facts, in admissible form, demonstrating that genuine, triable issues exist precluding the granting of summary judgment (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

ECS submitted, in support of its motion, the depositions of plaintiff, Rolff and Petrizzi, plaintiff's notice of claim, verified bill of particulars, and photographs of the location of the incident, as well as the diagram of the area where the test pit was actually excavated. Combined, these documents show that neither ECS nor its agents had performed work where plaintiff allegedly fell. ECS thus demonstrated that, on the merits, it was entitled to judgment as a matter of law.

Plaintiff, in opposition, submitted photographs and the application for the test pit excavation permit. Significantly, this permit application described the location of the test pit in the subject intersection and, at the bottom of the application, contained a depiction showing that the test pit was to be located on the northwest corner of the crosswalk and would not extend into the area where plaintiff claimed she fell. This was consistent with the diagram prepared by RBA Group showing the actual work performed. Moreover, this diagram indicated a manhole owned by ECS located in the vicinity of the excavation, while the pictures of the area where plaintiff fell showed a municipal manhole owned by DWS.

To defeat this motion, plaintiff had to establish the existence of "facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (*Ingersoll v Liberty Bank of Buffalo*, 278 NY 1, 7 [1938]). However, such proof must permit a finding of proximate cause "based not upon speculation, but upon the logical inferences to be drawn from the evidence" (*Schneider v Kings Highway Hosp. Ctr.*, 67 NY2d 743, 744 [1986]).

Other than speculative assertions regarding the overall dimensions of the intersection, the relation between the test pit and a defect, the use of any machinery that could have caused the defect and the absence of any inspection records showing the work performed was satisfactory, the record contains no evidence that ECS ordered or performed any excavation or road work where plaintiff fell. At best, plaintiff demonstrated that ECS was present at the site some eight months before plaintiff's fall, which is insufficient to raise a triable issue of fact as to whether ECS worked in the crosswalk where plaintiff fell (*see Tepper v City of New York*, 13 AD3d 124 [2004]). Absent some evidence connecting this defendant's work to the situs of plaintiff's injury, ECS is entitled to summary judgment (*Robinson v City of New York*, 18 AD3d 255 [2005]). Concur—Buckley, P.J., Tom, Andrias, Gonzalez and Sweeny, JJ.